IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


MARCELO ARAGON,

      **Plaintiff,**

    vs.                                                                              Civ. No. 17-1160 SCY

**NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 19) filed May 1, 2018, in support of Plaintiff Marcelo Aragon's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claims for Title II disability insurance benefits and Title XVI supplemental security income. On August 7, 2018, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). Doc. 24. The Commissioner filed a Response in opposition on October 10, 2018 (Doc. 26), and Plaintiff filed a Reply on October 22, 2018 (Doc. 27). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 7, 13, 14.)

## I. Background and Procedural Record

Claimant Marcelo Aragon ("Mr. Aragon") alleges that he became disabled on February 27, 2014, at the age of forty-one because of arthritis, depression, diabetes, severe hearing loss, vertigo, obesity, high blood pressure, brittle teeth, difficulty reading and writing, and skin problems (shingles). Tr. 210, 224.[2] Mr. Aragon completed the twelfth grade in 2001, and has worked as a custodian, customer service representative, and as a director of audio visual in hospitality. Tr. 225-26.

On February 27, 2014, Mr. Aragon protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. Tr. 197-98. He concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Mr. Aragon's applications were initially denied on August 22, 2014. Tr. 71, 72, 73-84, 85-98, 129-32. They were denied again at reconsideration on February 6, 2015. Tr. 97, 98, 99-113, 114-28, 140-42. Mr. Aragon requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ James Bentley conducted a hearing on October 13, 2016. Tr. 40-70. Mr. Aragon appeared in person at the hearing with attorney representative Michele Baca. *Id*. The ALJ took testimony from Mr. Aragon, and an impartial vocational expert ("VE"), Bonnie Ward. *Id.* On November 18, 2016, ALJ Bentley issued an unfavorable decision. Tr. 17-35.

On September 27, 2017, the Appeals Council issued its decision denying Mr. Aragon's request for review and upholding the ALJ's final decision. Tr. 1-6. On November 22, 2017,

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 19) that was lodged with the Court on May 1, 2018.

Mr. Aragon timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*,

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004);

4

*Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ determined that Mr. Aragon was not disabled at step five of the sequential evaluation. Tr. 33-35. In making this determination, the ALJ found at step one that Mr. Aragon met the insured status requirements through September 30, 2017, and that he had not engaged in substantial gainful activity since his alleged onset date. Tr. 22. At step two, the ALJ found that since his alleged onset date, Mr. Aragon had severe impairments of morbid obesity, osteoarthritis of the bilateral knees, intermittent vertigo, and major depressive disorder, recurrent, severe. *Id.* He also found nonsevere impairments of bilateral sensorineural hearing loss, GERD, sleep apnea, hypertension, asthma, and seasonal allergies. Tr. 23. The ALJ further stated that he had carefully considered Mr. Aragon's statements of chronic pain. Tr. 22-23. The ALJ, however,

determined that Mr. Aragon's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. Tr. 25-27. As a result, the ALJ proceeded to step four and found that Mr. Aragon had the residual functional capacity to perform less than a full range of sedentary work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally, and less than 10 pounds frequently; to stand and/or walk for about two hours total during an eight hour work day; and to sit for about six hours total during an eight hour work day. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolding. He can occasionally stoop, kneel, crouch, and crawl. He must avoid unprotected heights and dangerous moving machinery. He must avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas. He must also avoid concentrated exposure to loud noises and extreme temperatures. He requires a sit/stand option, defined as just a temporary change in position from sitting to standing and vice versa, with no more than one change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production. He is limited to superficial contact with peers, supervisors, and the general public.

Tr. 27. The ALJ concluded at step four that Mr. Aragon was not able to perform any past relevant work. Tr. 33. At step five, the ALJ determined based on Mr. Aragon's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Mr. Aragon could perform and was, therefore, not disabled. Tr. 34-35.

Mr. Aragon asserts four arguments in support of his Motion as follows: (1) the ALJ failed to apply SSR 16-3p in analyzing the severity and persistence of Mr. Aragon's symptoms; (2) the ALJ failed to properly evaluate the opinion of State agency examining psychological consultant Amy DeBernardi, Psy.D.; (3) the ALJ improperly evaluated Mr. Aragon's obesity at step three of the sequential evaluation; and (4) the ALJ's RFC is not supported by substantial evidence. Doc. 24 at 13-18. Because the Court finds that the ALJ's decision fails to indicate adequate

consideration of Mr. Aragon's obesity in relation to his knee pain, and his difficulties with ambulation, this case requires remand.

### A. RFC Assessment

It is undisputed that Mr. Aragon is morbidly obese. Throughout the relevant period of time, Mr. Aragon was 5'7", and weighed anywhere from 380 to 418 pounds. Tr. 318, 320, 577, 580, 582, 617, 682, 824, 827, 848. Mr. Aragon testified at the hearing that he weighed 402 pounds. Tr. 45. Given Mr. Aragon's height and weight, he has a body mass index over 60 and is considered extremely obese. *See* SSR 92-1p, 2002 WL 34686281, at *2 (explaining that extreme obesity includes BMIs greater than or equal to 40 and represents the greatest risk for developing obesity-related impairments).

Mr. Aragon argues that the ALJ failed to properly consider his obesity when forming the RFC. Doc. 24 at 17-18. In particular, he argues that the ALJ only considered the impact of Mr. Aragon's obesity on his knee pain, albeit not thoroughly, and failed to consider Mr. Aragon's obesity on all of his other impairments, namely his major depressive disorder. *Id.* The Commissioner contends that the ALJ's RFC finding thoroughly assessed the effects of Mr. Aragon's obesity. Doc. 26 at 20-21. For example, the Commissioner asserts that ALJ limited Mr. Aragon to sedentary work due to his obesity and interrelated knee pain, and included a sit-stand option. *Id.* at 20-21. The Commissioner also asserts that no other medical source opinion opined greater limitations than the ALJ assessed. *Id.*

In assessing a claimant's RFC at step four, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2) and (3). Most importantly, the ALJ's "RFC assessment must include a

narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).

Because Mr. Aragon is extremely obese, the ALJ is also required to engage in additional analysis in his opinion. "Social Security Rule 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (unpublished) (quoting SSR 02-1p, 2002 WL 34686281, at *1). Thus, an ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but rather must "evaluate each case based on the information in the case record." SSR 02-1p, 2002 WL 34686281, at *6.

Ruling 02-1p provides guidance and instructions on how an ALJ *must* consider obesity in the RFC assessment even though SSR 96-8p says, "[a]ge and body habitus are not factors in assessing RFC." *See* SSR 02-1p, 2002 WL 34686281, at *7 ("How Can We Consider Obesity in the Assessment of RFC When SSR 96-8p says, 'Age and Body Habitus Are not Factors in Assessing RFC'"?). The ruling specifically instructs that the ALJ must distinguish between individuals who have a medically determinable impairment of obesity and individuals who do not. *Id.* "When we identify obesity as a medically determinable impairment . . . , we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." *Id.* The Social Security Ruling further instructs that

> [o]besity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect

> ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p . . . , our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.
>
> . . .
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2002 WL 34686281, at *6-7.

Here, the ALJ determined that Mr. Aragon had a medically determinable severe impairment of morbid obesity. Tr. 22. The ALJ also determined that Mr. Aragon had severe impairments of osteoarthritis of the bilateral knees, intermittent vertigo, and major depressive disorder, as well as non-severe impairments of bilateral sensorineural hearing loss, GERD, sleep apnea, hypertension, asthma, and seasonal allergies. Tr. 22-23. Finally, the ALJ considered that Mr. Aragon's statements related to chronic pain. *Id.* As such, the ALJ was required to consider

any functional limitations resulting from his obesity, and the combined effect of his obesity with his other impairments. SSR 02-1p, 2002 WL 34686281, at *6-7.

### The ALJ's Consideration of Functional Limitations Related To Mr. Aragon's Obesity and Knee Pain Is Insufficient

The ALJ gave significant weight to the State agency examining and nonexamining medical consultants and, with regard to ambulation, assessed an RFC consistent with their opinions. In doing so, however, the ALJ did not adequately consider the more recent opinions of Dr. Valerie Carrejo, Mr. Aragon's treating physician. Further, rather than considering the entire record, the ALJ picked parts of the record that supported his conclusion. For these reasons, the ALJ committed error.

On July 12, 2014, State agency examining medical consultant Ryan C. LeBaron, M.D., examined Mr. Aragon. Tr. 336. He assessed that:

> [g]iven the knee pain as well as morbid obesity, I would assume that there would be likely limitations with lifting or carrying greater than 25 pounds greater than occasionally as well as greater than 15 pounds greater than frequently throughout the day as well as walking, squatting, and bending greater than occasionally throughout the day without intermittent breaks. I would recommend against working at heights given the reported vertigo as well as working with heavy machinery. I find no objective evidence which would limit the patient's ability to sit and work with his hands with both fine and gross manipulations. . . .

Tr. 336. The ALJ gave Dr. LeBaron's opinion significant weight.[4] Tr. 32. After Mr. Aragon saw Dr. LeBaron, however, it appears that his ability to ambulate deteriorated. For example, on August 18, 2014, Mr. Aragon saw Dr. Valerie Carrejo, his treating physician, and reported that his left knee pain was becoming worse with ambulation and that he sometimes felt like it was

---

[4] The ALJ also accorded significant weight to the opinions of the State agency nonexamining medical consultants who assessed that Mr. Aragon could perform less than light exertional work. Tr. 32.

going to give out with walking.[5] Tr. 578-81. On November 10, 2014, Mr. Aragon reported to Dr. Carrejo he had experienced a fall and that he was using a cane for stability. Tr. 576-78. On January 20, 2015, Mr. Aragon reported to Dr. Carrejo that he was having ongoing issues with falling, and that he had two falls in the past month. Tr. 616-19. He reported using a cane. *Id.* On March 21, 2016, Mr. Aragon reported to Dr. Carrejo tripping and falling "a lot," and that he was using a cane even while ambulating at home. Tr. 847-49. It was also on this date that Dr. Carrejo assessed that, due to Mr. Aragon's morbid obesity and related pain, he would benefit from a scooter or a power mobility device to improve his quality of life and help him ambulate more safely.[6] *Id.*

Each of the above-cited treating physician treatment notes that related to Mr. Aragon's increased difficulties with ambulation *post-date* the State agency opinions upon which the ALJ relied. In his decision, however, the ALJ does not address the fact that the examining and consulting opinions on which he relied were prepared approximately seventeen months *before* the treating physician's opinion that he discounted. *See generally Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior). Nor did the ALJ acknowledge the possibility that Dr. Carrejo's March 21, 2016, opinion related to Mr. Aragon's difficulties with ambulation might provide a better indication of Mr. Aragon's condition in 2016 (when the ALJ issued his decision) than the 2014 opinions of the State agency medical consultants who did not treat Mr. Aragon. *See Robinson v. Barnhart*, 366 F.3d 1078,

---

[5] Dr. Carrejo began treating Mr. Aragon on September 26, 2013. Tr. 319-21. The record contains ten treatment notes by Dr. Carrejo from September 26, 2013, through March 21, 2016. Tr. 317-18, 319-21, 576-78, 578-81, 581-84, 616-19, 682-83, 824-25, 826-27, 847-49.

[6] Mr. Aragon testified on October 13, 2016, that he believed the power mobility device had been approved. Tr. 54. He also testified that he had been approved for a handicap sticker. *Id.*

1084 (10th Cir. 2004) (explaining that the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all).

Instead, the ALJ asserted that numerous physical examinations failed to support a determination that Mr. Aragon might need a scooter or power mobility device to ambulate safely, and discounted Dr. Carrejo's opinion on that basis. Tr. 29. The ALJ, however, did not then cite to any specific physical examinations or describe what additional physical exam findings (beyond his already objectively assessed morbid obesity and bilateral knee pain) were necessary to support Mr. Aragon's need for assistance with ambulation. The ALJ further rejected Dr. Carrejo's opinion about a scooter or power mobility device on grounds that "the preponderance of the evidence weighs against it." Tr. 29. In support, the ALJ found that Mr. Aragon repeatedly demonstrated an ability to ambulate without the aid of an assistive device. *Id.* Yet, in support of this finding, the ALJ only cited to one record that indicated Mr. Aragon was ambulatory with a steady gait.[7] *Id.*

The ALJ also noted that Dr. Carrejo's March 21, 2016, treatment note "was the first, and sole, occasion the claimant exhibited [an unsteady gait and imbalance] and [that] Dr. Carrejo mentioned scooter or power mobility device . . . ." Tr. 29. The ALJ is correct that Dr. Carrejo's March 21, 2016, note is the first exam note on which she made specific findings related to Mr. Aragon's unsteady gait and imbalance.[8] However, none of Dr. Carrejo's other treatment notes affirmatively indicated that Mr. Aragon had a steady gait – other notes were simply silent

---

[7] The record cited was when Mr. Aragon presented to the Lovelace Hospital Emergency Room with abdominal pain on September 30, 2015. Tr. 704-802. Discharge notes indicated that Mr. Aragon was ambulatory out of the ER with a steady gait. Tr. 712.

[8] Dr. Carrejo specifically noted on that date that Mr. Aragon was ambulating with a cane and that his gait was unsteady and unbalanced. Tr. 847-48.

12

on the issue. Granted, if Mr. Aragon had an extremely unsteady gait on previous exams, one would expect notes from those exams to document this unsteady gait. Nonetheless, a decision maker should be cautious about reading too much into what is not said. *See generally Thompson v. Sullivan*, 987 F.2d 1482, 1484 (10th Cir. 1993) (explaining that an ALJ cannot rely on the absence of evidence as evidence). Moreover, if Mr. Aragon's ability to ambulate was decreasing over time, as the evidence indicates, it is not surprising that more recent notes would document the severity of a condition not reflected in previous notes.

In addition, other materials that the ALJ relied on to discount Dr. Carrejo's opinion were simply mischaracterized. The ALJ stated that Mr. Aragon had reported to Dr. Carrejo falling only once when his knees gave out. *Id.* The record, however, demonstrates that by January 2016, Mr. Aragon reported to Dr. Carrejo that he had fallen at least *three* times, and had an ongoing issue with his balance both at home and when going outside of his house. Tr. 576-78, 616-19. And by March of 2016, Mr. Aragon was reporting that he was tripping and falling "a lot". Tr. 847-49. Thus, the ALJ's conclusion is, at least in part, based on a misapprehension of the record.

This problem is exacerbated by at least one instance in which the ALJ cited to portions of the record that support his decision while ignoring other portions of the record that undermine his decision. Specifically, the ALJ noted that State agency consultative medical examiner Dr. LeBaron documented that Mr. Aragon came to the examination with a cane, but then did not need it for ambulation in the examination room. Tr. 29. The ALJ failed to note, however, Dr. LeBaron's documentation that Mr. Aragon *used the cane* to ambulate into the room as well as out of the room when the exam was completed. Tr. 335. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (holding that an ALJ is not required to discuss every piece of evidence, but in addition to discussing the evidence supporting his decision, he must also discuss the

13

uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects). Similarly, the ALJ did not acknowledge that, on August 7, 2014, State agency examining psychological consultant Amy DeBernardi, Psy.D., noted that Mr. Aragon used a cane as an assistive device. Tr. 338.

Finally, the ALJ's decision to discount Dr. Carrejo's opinion about Mr. Aragon's ability to ambulate was also partly based on his rejection of Dr. Carrejo's determination that Mr. Aragon had arthritis in his knee. Tr. 31. While an ALJ can look at objective evidence, or lack thereof, the records demonstrate that Dr. Carrejo was aware of what the x-rays showed or did not show at the time she determined Mr. Aragon had arthritis in his knee. Thus, this case does not present the situation where a doctor's diagnosis is undermined by information the ALJ knew at the time of his decision but that the doctor did not know at the time of her diagnosis. Dr. Carrejo was aware of all of the same evidence the ALJ considered and made a different medical conclusion than the ALJ; namely, that Mr. Aragon had arthritis in his knee. It is Dr. Carrejo's medical opinion, not the medical opinion of the ALJ, that counts. Thus, the ALJ's rejection of Dr. Carrejo's opinion regarding Mr. Aragon's need for ambulation assistance effectively substituted his lay opinion for that of Mr. Aragon's treating physician, which is not permitted. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (finding that an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgments, speculation or lay opinion); *see also Robinson*, 366 F.3d at 1084.

Importantly, Mr. Aragon has identified evidence in support of his contention that his obesity causes further limitations than the ALJ assessed. This matters because the Tenth Circuit has repeatedly (albeit in unpublished decisions) found that a claimant cannot simply assert

14

obesity as the basis for a disability determination. For instance, in *Arles v. Astrue*, 438 F. App'x 735 (10th Cir. 2011) (unpublished), the claimant argued that the ALJ "failed to include his obesity in the RFC determination." *Id.* at 740. While the Tenth Circuit observed that "[t]he ALJ could have provided a more particularized discussion of the effects of Mr. Arles's obesity," the court found that the ALJ examined the medical records, stated that the claimant's obesity had been evaluated under the criteria set forth in SSR 02-1p,[9] and "[m]oreover, Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work." *Arles*, 438 F. App'x at 740. The court, therefore, found no error. *Id.* In *Smith v. Colvin*, 625 F. App'x 896 (10th Cir. 2015) (unpublished), the claimant argued that the ALJ failed to properly consider her obesity in formulating her RFC. *Id.* at 899. The Tenth Circuit held that an ALJ is not required to note the absence of evidence that obesity resulted in additional functional limitations or exacerbated any other impairment. *Id.* Finally, in *Rose v. Colvin*, 634 F. App'x 632 (10th Cir. 2015) (unpublished), the claimant argued that "although the ALJ found her obesity to be a severe impairment, he failed to properly consider its effects in formulating her RFC." *Id.* at 637. The Tenth Circuit acknowledged that "[t]he ALJ did not specifically mention obesity in the RFC determination," but, instead, included certain specific postural limitations. *Id.* Nonetheless, the claimant had failed to point to any medical evidence indicating that her obesity resulted in greater functional limitations than those assessed, and that the claimant had not described any limitations due to her obesity during her hearing testimony. *Id.* As a result, the Tenth Circuit concluded that the factual record did not support

---

[9] The Tenth Circuit stated that the court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Arles*, 438 F. App'x at 740 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

15

the claimant's position that her obesity, either alone or in combination with other conditions, precluded her from performing a limited range of sedentary work as assessed. *Id.*

Here, as discussed above, Mr. Aragon has done what all these claimants did not. He has pointed to treating physician evidence that demonstrates his obesity in combination with his knee impairment impacts his ability to ambulate and results in greater functional limitations than the ALJ assessed. Although the ALJ was not obligated to accept the treating physician's opinion regarding Mr. Aragon's ability to ambulate, he was required to provide more sufficient bases for rejecting that opinion. In other words, the ALJ's decision fails to indicate adequate consideration of Mr. Aragon's obesity in relation to his knee pain, his difficulties with ambulation, and his RFC. This is reversible error. *See DeWitt*, 381 F. App'x at 786.

B. **Remaining Issues**

The Court will not address Mr. Aragon's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

IV. **Conclusion**

For the reasons stated above, Mr. Aragon's Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 24) is **GRANTED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**